UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

MAYOLO DIMAS, on behalf of himself
and others similarly situated,

               Plaintiff,

     v.

COSTCO WHOLESALE
CORPORATION and EMPLOYBRIDGE
HOLDING COMPANY dba SELECT
STAFFING;

               Defendants.

No. 2:21-cv-02006-TLN-JDP

**ORDER**

      This matter is before the Court on Defendants Costco Wholesale Corporation ("Costco")
and EmployBridge Holding Company dba Select Staffing's ("Select Staffing") (collectively,
"Defendants") Motion to Compel Arbitration.  (ECF No. 8.)  Plaintiff Mayolo Dimas ("Plaintiff")
filed an opposition.  (ECF No. 12.)  Defendants filed a reply.  (ECF No. 15.)  For the reasons set
forth below, the Court GRANTS Defendants' motion.

///

///

///

///

///

1

1

## I.     FACTUAL AND PROCEDURAL BACKGROUND

2          On July 2, 2021, Plaintiff filed this putative class action against Defendants in San

3   Joaquin County Superior Court alleging various state law wage and hour violations.  (ECF No. 1.)

4   On October 29, 2021, Defendants removed the action to this Court pursuant to the Class Action

5   Fairness Act.  (*Id.*)  Defendants filed the instant motion to compel arbitration on November 24,

6   2021.  (ECF No. 8.)  The only issue presently before the Court is whether the arbitration

7   agreement Plaintiff electronically signed as part of his employment application is enforceable.[1]

8   Although the parties dispute many of the facts relevant to this motion, the Court ultimately finds

9   that Defendants' motion should be granted even if the Court accepts Plaintiff's version of the

10  facts as true.  As such, the Court will only present Plaintiff's version of the facts herein.

11         Plaintiff primarily speaks and reads in Spanish.  (ECF No. 12-1 at 6.)  He can only

12  communicate verbally in English in basic conversation and is unable to read English except for

13  basic words.  (*Id.*)  In February 2020, Plaintiff visited a Select Staffing temporary employment

14  agency in Stockton, California looking for work.  (*Id.* at 8.)  During the initial visit, Plaintiff was

15  unable to communicate with the Select Staffing employee, who spoke limited Spanish.  (*Id.*)  The

16  employee instructed Plaintiff to return when another employee who spoke Spanish and English

17  could help him.  (*Id.*)

18         Plaintiff returned the next day and communicated with another Select Staffing employee

19  only in Spanish.  (*Id.*)  The employee informed Plaintiff he needed to fill out information on a

20  computer to apply for work.  (*Id.*)  Plaintiff told the employee he did not know how to use

21  computers, so the employee set up a computer at the agency for him to use.  (*Id.*)  The employee

22  assisted Plaintiff in filling out information and selecting a username and password.  (*Id.*)  The

23  forms Plaintiff completed were in English, and he did not recall seeing an option to complete the

24  ─────────────────────

25  [1]      The arbitration agreement states in relevant part, "In the event there is any dispute
   between you and the Company relating to or arising out of the employment or termination of your
26  employment . . . regardless of the kind or type of dispute, you and the Company agree to submit
   all such claims or disputes to be resolved by final and binding arbitration, instead of going to
27  court, in accordance with the procedural rules of the Federal Arbitration Act."  (ECF No. 8-2 at
   22.)  The agreement further states that covered disputes include claims for wages, salary, and
28  compensation.  (*Id.*)  Lastly, the agreement includes a class action waiver.  (*Id.*)

forms in Spanish.  (*Id.*)  The employee did not inform Plaintiff there were Spanish versions of the forms or that Plaintiff could fill out the information on a computer at home.  (*Id.* at 8–9.)  Plaintiff completed the forms at the Select Staffing agency location as the employee provided vague descriptions of the documents.  (*Id.* at 9.)  The employee never used the word "arbitration" or told Plaintiff that he was signing an agreement or contract giving up his right to file a lawsuit against the company.  (*Id.*)

## II.   STANDARD OF LAW

In deciding whether to compel arbitration, a district court typically determines two gateway issues: (1) whether a valid agreement to arbitrate exists; and (2) if it does, whether the agreement encompasses the dispute at issue.  *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004).  "To evaluate the validity of an arbitration agreement, federal courts 'should apply ordinary state-law principles that govern the formation of contracts.'"  *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).  If the court is "satisfied that the making of the arbitration agreement or the failure to comply with the agreement is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement."  9 U.S.C. § 4.  "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).  If a court "determines that an arbitration clause is enforceable, it has the discretion to either stay the case pending arbitration, or to dismiss the case if all of the alleged claims are subject to arbitration."  *Hoekman v. Tamko Bldg. Prod., Inc.*, No. 2:14-cv-01581-TLN-KJN, 2015 WL 9591471, at *2 (E.D. Cal. Aug. 26, 2015) (citation omitted).

## III.   ANALYSIS

In moving to compel arbitration, Defendants argue there is an enforceable arbitration agreement that encompasses the claims at issue.  (ECF No. 8 at 16–19.)  In opposition, Plaintiff argues only that the arbitration agreement is unenforceable.  (ECF No. 12 at 12–13.)  Plaintiff does not dispute that the agreement, if enforceable, encompasses the claims at issue.

///

The party moving to compel arbitration has the burden of proving by a preponderance of the evidence that a valid agreement exists. *Castillo v. CleanNet USA, Inc.*, 358 F. Supp. 3d 912, 928 (N.D. Cal. 2018) (citing *Bruni v. Didion*, 160 Cal. App. 4th 1272, 1282 (2008)). To determine whether a valid agreement exists, the Court applies California law. *See Wolsey, Ltd. v. Foodmaker, Inc.*, 144 F.3d 1205, 1210 (9th Cir. 1998) ("[C]ourts must 'apply ordinary state-law principles that govern the formation of contracts.'") (internal citation omitted). The opposing party bears the burden of proving any defenses by a preponderance of the evidence. *Castillo*, 358 F. Supp. 3d at 928. The Court weighs the evidence to reach its ultimate determination regarding the existence of a contract and if a defense renders the contract unenforceable. *Id.*; *see also Rosenthal v. Great Western Fin. Securities Corp.*, 14 Cal. 4th 394, 413 (1996).

In the instant case, Plaintiff raises the defense of fraud in the execution.[2] (ECF No. 12 at 5.) Fraud in the execution occurs when "the promisor is deceived as to the nature of his act," meaning mutual assent is lacking. *Castillo*, 358 F. Supp. 3d at 930; *Rosenthal*, 14 Cal. 4th at 415. To demonstrate fraud in the execution, Plaintiff must show: (1) there was a misrepresentation; and (2) Plaintiff reasonably relied on that misrepresentation. *Castillo*, 358 F. Supp. 3d at 430. Plaintiff alleges the Select Staffing employee failed to disclose the arbitration agreement and that he reasonably relied on the employee's misrepresentation. (ECF No. 12 at 8.) Plaintiff relies on three cases that are relevant to the Court's conclusion: (1) *Castillo*; (2) *Rosenthal*; and (3) *Ramos*. The Court will summarize each case in turn.

In *Castillo*, a district court found an arbitration provision in a franchise agreement to be unenforceable due to fraud in the execution. *Castillo*, 358 F. Supp. 3d at 933. The defendant's employee who had encouraged the plaintiff to sign the agreement did not disclose that it contained an arbitration provision. *Id.* at 930. In finding that the plaintiff reasonably relied on the misrepresentation, the court emphasized: (1) the plaintiff was not proficient in English and could not have understood the arbitration agreement without assistance; (2) the plaintiff asked for

---

[2] In Plaintiff's declaration, he states the documents are not his signature or handwriting. (ECF No. 12-1 at 9.) However, Plaintiff's counsel does not pursue this argument and instead repeatedly acknowledges that Plaintiff electronically signed the documents. (*See, e.g.*, ECF No. 12 at 5 ("Select Staffing's agent obtained [Plaintiff's] electronic signature . . .").)

4

a Spanish translation of the agreement and was told there was none; and (3) the employee assured the plaintiff she would assist him, as she had done during a prior meeting when the plaintiff completed an application with her.  *Id.* at 933.  The court concluded that this past assistance and the plaintiff's numerous conversations with the employee led the plaintiff to believe he could trust her.  *Id.*  The court also noted that the plaintiff did not have an opportunity to review the agreement prior to signing and the employee did not encourage the plaintiff to consult with an attorney or obtain English language assistance — rather, the employee encouraged the plaintiff to rely on her translation of the documents.  *Id.*  For all these reasons, the court found the plaintiff reasonably relied on the employee's translation and was unaware he was entering into an arbitration agreement, which rendered the agreement void.  *Id.*

In *Rosenthal*, the plaintiffs sued a company they had contracted with to invest in mutual funds that ultimately declined in value and lost portions of their principal.  14 Cal. 4th at 403.  The defendants moved to compel arbitration based on client agreements signed by the parties.  *Id.*  In opposition, the plaintiffs argued fraud in the execution because they were not told the agreements contained an arbitration clause.  *Id.*  The California Supreme Court found some of the plaintiffs successfully demonstrated reasonable reliance on the omission and others did not.  First, the Court found that plaintiffs Giovanna Greco and Rosalba Kasbarian showed reasonable reliance because: (1) Greco and Kasbarian were led to believe the representatives they spoke to worked for another company they had a prior relationship with; (2) Greco and Kasbarian had a limited ability to understand English; and (3) the representatives orally recited the terms of the agreements to Greco and Kasbarian and told them the oral recitals accurately reflected the terms of the agreements.  *Id.* at 427–28.  In contrast, the Court found that other plaintiffs, Raul Pupo and Felix Segarra, had not shown reasonable reliance.  *Id.* at 431.  The Court explained that although Pupo and Segarra "produced evidence of limited facility with English," neither of them "present[ed] evidence that the representative purported to read the contract to them or explain its full contents orally."  *Id.*  The Court also noted Pupo or Segarra did not tell the representative they could not read the contracts and Pupo had no prior relationship with the company, the related company, or the representative.  *Id.*

Lastly, in *Ramos*, the plaintiff signed a sales contract written in English even though he primarily spoke Spanish and had only a limited ability to understand English. *Ramos v. Westlake Servs.*, 242 Cal. App. 4th 674, 686–87 (2015). The English version of the contract the plaintiff signed contained an arbitration provision. *Id.* Although the defendant also provided the plaintiff with a Spanish translation of the contract, the Spanish version of the contract did not contain the arbitration provision. *Id.* at 687. The court held that the plaintiff reasonably relied on the omission, not solely because of the language barrier, but also because the arbitration provision was hidden in the English contract and absent in the Spanish contract. *Id.* at 687–88.

The instant case is distinguishable from *Castillo*, *Rosenthal*, and *Ramos*. At the outset, these cases clearly indicate that Plaintiff's inability to understand English, without more, is not dispositive. *See Castillo*, 358 F. Supp. 3d at 932 ("The fact that an individual who signs an arbitration agreement is not proficient in English is not, by itself, enough to demonstrate fraud in the [execution], even if the agreement was provided only in English."); *see also Ramos*, 242 Cal. App. 4th at 686 ("[O]ne who accepts or signs an instrument . . . is deemed to assent to all its terms, and cannot escape liability on the ground that he has not read it. If he cannot read, he should have it read or explained to him."). Further, unlike the plaintiffs in *Castillo* and *Ramos*, Plaintiff does not allege that he asked for or was given a Spanish version of the documents. Instead, Plaintiff simply chose to sign the English version of the documents after being given "vague" descriptions of the documents. (ECF No. 12 at 8.) In addition, unlike the plaintiff in *Castillo* and plaintiffs Greco and Kasbarian in *Rosenthal*, there is no evidence Plaintiff had a prior relationship with the Select Staffing employee, that she assured him that her descriptions accurately reflected the contents of the documents, or that she encouraged him to rely solely on her descriptions of the documents. As such, like plaintiffs Pupo and Segarra in *Rosenthal*, Plaintiff's "failure to take measures to learn the contents of the document [he] signed is attributable to [his] own negligence, rather than to fraud on the part of [Defendants]." 14 Cal. 4th at 431. In short, even taking Plaintiff's version of the facts as true, Plaintiff has not convinced the Court that he reasonably relied on the Select Staffing employee's misrepresentations and/or omissions. *See Rosenthal*, 14 Cal. 4th at 424 (stating "it is generally unreasonable . . . to neglect

to read a written agreement before signing it[,]" and "[o]ne party's making of such an assurance does not, by itself, deprive the other party to a prospective contract of the reasonable opportunity to discover the character and essential terms of the agreement.").

In sum, the Court finds the arbitration agreement is enforceable and encompasses the claims at issue.  *Lifescan, Inc.*, 363 F.3d at 1012.  Defendants request the Court dismiss this action (including the class claims that are subject to the class action waiver) rather than stay the action pending arbitration.  Plaintiff does not request a stay or oppose dismissal of the class claims.  Accordingly, the Court DISMISSES the action in its entirety.

**IV.    CONCLUSION**

For the foregoing reasons, the Court GRANTS Defendants' Motion to Compel Arbitration and DISMISSES this action.  (ECF No. 8.)  The Clerk of Court is directed to close the case.

IT IS SO ORDERED.

**DATE:  April 17, 2023**

Troy L. Nunley
United States District Judge